FILED
Dec 08, 2021
10:51 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Rakim Aliyy,** | ) | **Docket No. 2021-06-0442** |
| **Employee,** | ) | |
| **v.** | ) | |
| **LG Electronics,** | ) | **State File No. 12408-2020** |
| **Employer,** | ) | |
| **And** | ) | |
| **Sompo America Ins. Co.,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

---

The Court held an expedited hearing on December 3, 2021. Mr. Aliyy requested that the Court order LG Electronics to provide additional treatment with Dr. Christopher Ashley, a referral physician. LG Electronics argued that Mr. Aliyy's current condition is not related to the work incident, relying upon the opinion of its physician, Dr. Christopher Kauffman. The Court holds that Mr. Aliyy did not satisfy his burden to show that his present symptoms arose primarily out of employment, and therefore Mr. Aliyy's request is denied at this time.

## Claim History

The parties agreed that, while working for LG Electronics on February 14, 2020, Mr. Aliyy injured his low back.

LG Electronics offered a panel listing three medical practices. Mr. Aliyy chose one, and a nurse practitioner ordered x-rays. At a follow-up visit, Mr. Aliyy saw a medical doctor, who diagnosed a low-back strain. At the next visit, he referred him to physical therapy. The doctor later referred him to Dr. Robert Kasper. Dr. Kasper ordered imaging, and Mr. Aliyy underwent a CT of the lumbar spine without contrast, which showed chronic multilevel degenerative changes and multilevel stenosis.

Dr. Kasper then referred Mr. Aliyy to a neurosurgeon but did not make a direct referral. Mr. Aliyy came under the authorized care of Dr. Ashley, who is not a neurosurgeon but a physical medicine, rehabilitation, and spine specialist.[1]

As to how he became Dr. Ashley's patient, Mr. Aliyy testified, "It wasn't a specialist that I chose; it was a specialist that the claims adjuster and all them chose." He later clarified that before he saw Dr. Ashley, the previous claims adjuster telephoned and offered treatment with a physician in Nashville or Dr. Ashley in Clarksville. Mr. Aliyy chose Dr. Ashley because Mr. Aliyy lives in Clarksville. Dr. Ashley saw Mr. Aliyy for the first time in June. Dr. Ashley noted that Dr. Kasper and the workers' compensation case manager referred him, although Dr. Kasper's notes do not say that.

At that visit, Dr. Ashley took a detailed history, reviewed x-rays and imaging results, and examined him. Dr. Ashley concluded: "Patient with low-back pain, status post lumbrosacral sprain. Appears to be having mostly mechanical low back pain and reactive facet joint pain with resultant sciatica. . . . It would be within a reasonable degree of medical certainty and medically probable on his current diagnosis, treatment plan were related to the work injury he described."

Mr. Aliyy returned four times over the next few months. During that time, Mr. Aliyy underwent conservative treatments, including facet joint blocks on two occasions. When his back pain remained, Dr. Ashley recommended medial branch blocks in September. He wrote, "If these are helpful, I would consider radiofrequency ablations. If they are not, would consider surgical consultation for continued conservative treatment. . . . WE [sic] will also have [patient] undergo an H-wave trial[.]"

Considering those treatment options, the claims adjuster "wanted a specialist to see Mr. Aliyy," per her declaration. LG Electronics sent Mr. Aliyy for an employer's examination with Dr. Kauffman, an orthopedic surgeon.[2]

Dr. Kauffman reached different conclusions than Dr. Ashley regarding the work-relatedness of Mr. Aliyy's condition. In his records, Dr. Kauffman wrote: "Patient's work-related condition is a lumbar sprain/strain. Patient has completed appropriate physical therapy, temporary medications and temporary activity modification. No role for surgical intervention. The patient's facet arthritis at L4-5 and L5-S1 is a pre-existing condition which is degenerative and unrelated to the work event."

---

[1] The Court takes judicial notice of Dr. Ashley's areas of specialization under Tennessee Rule of Evidence 201 (2021). *See* https://toa.com/physicians/christopher-p-ashley-md (last checked Dec. 8, 2021).

[2] LG Electronics referred to Dr. Kauffman's opinions as a "second opinion" in its brief. However, at the hearing, counsel agreed that Dr. Kauffman's opinion is properly characterized as an employer's examination under Tennessee Code Annotated section 50-6-204(d)(1).

Dr. Kauffman additionally answered a causation letter from the adjuster, where he checked a box that the injury arose primarily out of employment. However, the letter contained a handwritten clarification: "Work injury is Lumbar Sprain/Strain[.] TENS Unit prescribed for Sprain/Strain → work related[.] Facet Arthritis is NOT Work Related[.]" (Emphasis in original).

Dr. Kauffman later signed a lengthy declaration stating in relevant part that he did not find a disc herniation but a "soft-tissue injury," which should have resolved and would not have needed further treatment after six to twelve weeks from the date of injury. He also disagreed with the reasonable necessity of the various treatment options that Dr. Ashley proposed.

Two months after Dr. Kauffman's examination, Dr. Ashley wrote an addendum to his records documenting his response. He wrote in relevant part:

> [W]e appreciate the second opinions, but as a treating physician I have established over the period of time [a] relationship with [the] patient as well as had the benefit of evaluating him multiple times and I have recommended specific treatment options. If the workplace does not want me to treat the patient how I see fit I believe at this point it would be better for them to refer the patient to a doctor of their choosing instead of limiting my ability to care for the patients [as] I see fit.

LG Electronics did not deny the claim, nor did it introduce a notice of controversy into evidence.

Mr. Aliyy testified that he did not hear from the adjuster until February or March of 2021. Afterward, he filed his petition seeking additional treatment with Dr. Ashley. LG Electronics offered a panel of orthopedic surgeons "to break the tie," according to its counsel.[3] But Mr. Aliyy declined to choose a physician. This hearing request followed.

**Findings of Fact and Conclusions of Law**

At an expedited hearing, Mr. Aliyy must show that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2021); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The Workers' Compensation Law requires an employer to furnish medical treatment made reasonably necessary by a work injury, beginning with the provision of a panel of physicians. Tenn. Code Ann. §§ 50-6-204(a)(1)(A), 50-6-204(a)(3)(A)(i). Here,

---

[3] LG Electronics offered no legal authority to support the propriety of offering a new panel when a treating physician and an employer's examiner disagree.

immediately after the incident, LG Electronics offered a panel in compliance with the law, and the physician Mr. Aliyy selected made a direct referral to Dr. Kasper. Dr. Kasper later made another referral to a neurosurgeon, which LG Electronics did not honor. Despite its counsel's arguments that Dr. Ashley's notes say Mr. Aliyy was a patient by referral by Dr. Kasper and the case manager, Dr. Kasper's notes simply do not say that. Moreover, Mr. Aliyy credibly testified, without contradiction, that the adjuster offered two choices over the phone. LG Electronics did not introduce a signed panel documenting his selection. The Court places greater weight on his sworn testimony over a medical record notation.

When a referral is made, "[t]he specialist physician . . . shall become the treating physician until treatment by the specialist physician . . . concludes and the employee has been referred back to the treating physician selected by the employee from the initial panel[.]" Tenn. Code Ann. § 50-6-204(a)(3)(E). Further, the Appeals Board explained, "Unless a court terminates an employee's entitlement to medical benefits, or approves a settlement in which the parties reach a compromise on the issue of future medical benefits, an injured worker remains entitled to reasonable and necessary medical treatment causally-related to the work injury[.]" *Limberakis v. Pro-Tech Security, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *7 (Sept. 12, 2017).

Here, the Court finds that Dr. Ashley became Mr. Aliyy's treating physician. His treatment did not "conclude." Rather, LG Electronics implicitly denied further treatment with him but never filed the required forms to notify Mr. Aliyy or the Bureau of its position. LG Electronics argued that no presumption of medical necessity attached to Dr. Ashley's opinions under Tennessee Code Annotated section 50-6-204(a)(3)(H). The Court disagrees. The cited statute states just the opposite. Moreover, the Court is concerned about how the carrier directed Mr. Aliyy to a physician with a specialty of its choosing, only to later question that physician's qualifications and the accuracy of his opinions.

Regardless, at this point, the case turns on the threshold question of causation. A work injury is defined in the statute as one "arising primarily out of and in the course and scope of employment" that causes the need for medical treatment. This includes the aggravation of a preexisting condition if it can be shown "to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." It must be shown to a reasonable degree of medical certainty that the employment contributed more than fifty percent in causing the injury, considering all causes. *See* Tenn. Code Ann. § 50-6-102(14)(A)-(C).

In this case, two specialist physicians offered different opinions, both of which ultimately do not provide satisfactory answers to whether Mr. Aliyy's current condition and need for treatment were caused by work.

Dr. Ashley characterized the facet arthritis as "reactive" to the incident and the sciatica as "resultant." These conditions might be considered "aggravations" of preexisting conditions under the above definition, but Dr. Ashley did not make that clear.

He also determined, "It would be within a reasonable degree of medical certainty and medically probable on his current diagnosis, treatment plan were related to the work injury he described." This sentence, likewise, is not a clear statement on the cause of Mr. Aliyy's need for medical treatment. Dr. Ashley did not say whether Mr. Aliyy's pain and discomfort aggravated his facet joint arthritis or sciatica, both preexisting conditions, and that—to a reasonable degree of medical certainty—the aggravations arose primarily out of and in the course and scope of employment such that the employment contributed more than fifty percent in causing the aggravations, considering all causes. Dr. Ashley *suggests* this, but it is just not entirely clear, and neither party posed the question to him in terms that satisfy the statutory definition.

Dr. Kauffman's opinion, although more precise, is not entirely clear, either. He wrote that the lumbar sprain, which he later called a "soft-tissue injury," was work related but should have healed by that point, and that any remaining facet arthritis was preexisting, degenerative, and not work-related. However, he did not state whether the preexisting facet joint arthritis or sciatica were aggravated and that to a reasonable degree of medical certainty, the aggravations did not arise primarily out of and in the course and scope of employment, or that the employment did not contribute more than fifty percent in causing the aggravations, considering all causes.

Importantly, at a hearing, the employee bears the burden of proof for each and every element of the claim. Tenn. Code Ann. § 50-6-239(c)(6). Mr. Aliyy's proof does not satisfy this burden. Therefore, at this time, the Court holds that Mr. Aliyy has not shown that he is likely to succeed at a hearing on the merits that he is entitled to further treatment with Dr. Ashley. Nothing in this opinion precludes him from gathering additional evidence to meet this standard.

As a final matter, the Court refers this case to the Compliance Program for consideration of the imposition of penalties for potential violations of the following.

- LG Electronics did not provide a panel of neurosurgeons as Dr. Kasper recommended, contrary to Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii).
- By Mr. Aliyy's unrefuted testimony, the adjuster offered a panel of only two specialist physicians telephonically and never memorialized his choice "in writing on a form prescribed by the bureau" as required under Tennessee Code Annotated section 50-6-204(a)(3)(D)(1).

- LG Electronics did not file a notice of denial or notice of controversy, as required under Tennessee Code Annotated section 50-6-205(c)(1) and Tennessee Compilation Rules and Regulations 0800-02-14-.04(8) (July, 2021).

IT IS ORDERED AS FOLLOWS:

1. Mr. Aliyy's requested relief is denied at this time.

2. This case is set for a status hearing on **February 7, 2022**, **at 9:45 a.m. Central Time**. Please call (615) 532-9552 or (866) 943-0025 to participate. Failure to appear may result in a determination of the issues without your participation.

**3.** The case is referred to the Compliance Program for consideration of the imposition of penalties as outlined above.

**Entered December 8, 2021.**

*Kenneth M. Switzer*
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix**

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice and Employer's Defenses
3. Order on Status Hearing, September 15, 2021
4. Hearing Request
5. Order on Status Hearing, October 5, 2021
6. Employee's Brief
7. Order Setting Expedited Hearing
8. Employer's Brief
9. Employer's Witness and Exhibit List
10. Employee's Witness List

Evidence:
1. Declaration of Mr. Aliyy
2. Declaration of Dr. Kauffman and attachments
3. Declaration of Ms. Piper-Lennon
4. Medical records
5. Photos/ergonomic report (Identification only)

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on December 8, 2021.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|----------------|--------------|-------|---------|
| Rakim Aliyy, self-represented employee | X | | X | 3944 Benjamin Drive Clarksville TN 37040 rakimaliyy@hotmail.com |
| Brett Burrow, Laura Bassett, employer's attorneys | | | X | Bburrow@burrowlee.com lbassett@burrowlee.com tbrasher@burrowlee.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*